IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-40653 |
| | ) | |
| RANDY C. MELCHER, | ) | CH. 12 |
| | ) | |
| Debtor(s). | ) | |
| | ) | |

ORDER

Trial was held in Lincoln, Nebraska, on February 25, 2010, on Filing #75, Motion for Relief from Stay, filed by Creditor Alesa Melcher and her law firm, Copple, Rockey & McKeever, P.C., L.L.O., and on the request by the Debtor to confirm an amended Chapter 12 plan, Filing #86. John Hahn appeared for the Debtor, David Copple appeared for Alesa Melcher and Copple, Rockey & McKeever, P.D., L.L.O., and James Overcash appeared as Chapter 12 trustee.

DECISION

The amended plan is denied confirmation. It is not feasible and does not fairly treat the claim of Alesa Melcher. The Motion for Relief from the Automatic Stay is granted to permit Alesa Melcher and her law firm, both secured creditors, to proceed in the state court with foreclosure of their judgment liens.

FINDINGS OF FACT

The Melchers had a long marriage and had four children. They operated a farm raising corn and soy beans and they owned a hog barn facility which generated income from lessees. For most, if not all of the marriage, Mr. Melcher worked off the farm in addition to doing the farm operations. Mrs. Melcher has a Doctor of Chiropractic degree and, until contracting a form of meningitis in the late '90s, worked off the farm as a chiropractor. Although she still has the disease and it impacts her strength, she does currently work approximately 15 hours per week in a chiropractic office.

The dissolution of marriage decree gave Mrs. Melcher the custody of the children and Mr. Melcher was required to pay monthly child support and alimony, and to provide health insurance for Mrs. Melcher and the children. Concerning the division of property, the dissolution of marriage decree gave Mr. Melcher the land and improvements, including the hog facility, subject to all of the secured debt. Mrs. Melcher was granted a judgment in the amount of approximately $400,000 which was to be paid within 45 days of the entry of the decree.

Mr. Melcher appealed to the Nebraska Court of Appeals. That court modified the judgment by reducing it by a few thousand dollars.

Mr. Melcher has paid nothing to Mrs. Melcher on the judgment. He filed this Chapter 12 case during the pendency of the appeal.

Mr. Melcher does not regularly pay child support or alimony and only pays it if Mrs. Melcher takes him to court for contempt, which she has done several times. Prior to the trial of this matter,

the health insurance in place at the time of the decree was cancelled. Although Mr. Melcher claims that he obtained other health insurance, there is no evidence of it in the record. One of their children has been trampled by a horse and has serious injuries and needs ongoing medical care. Recently, Mrs. Melcher took the child to the local hospital for a medical examination. She had no insurance card and when the hospital administrator contacted Mr. Melcher about insurance or payment for the medical services to be rendered, he informed the administrator that there was no coverage and that he was not responsible for the medical expenses. Mrs. Melcher and the child were refused medical care since she has no insurance and she has no money.

Because Mr. Melcher has made no payments on the judgment and because he does not regularly pay support and alimony, Mrs. Melcher does not have adequate means to support her family. Her children receive subsidized lunches at school, she cannot make the payments on the house she bought during the divorce, her credit cards have been cancelled, and, generally, she is simply without funds.

Mr. Melcher has had possession and use of the farm operations for the crop years 2008 and 2009. At trial he did not present a tax return for 2008 or 2009 so the court is unable to determine what operating profit, if any, there is from those two years. On the other hand, earlier tax returns in evidence show that the farm has lost money on a regular basis.

The amended plan proposes to pay $39,314 in unsecured debt over five years with interest. The annual payment would be $7,863, plus interest. Farm Credit Services is to receive $15,208 per year on a debt of $227,277.55, plus attorney fees. That amount is to be amortized over 30 years at 5.25% with a 10 year balloon. Madison County Bank is to receive $6,573 per year on a debt of $98,229.61, plus attorney fees. That debt is being amortized over 30 years at 5.25% with a 10 year balloon. Neither the unsecured creditors nor Farm Credit Services nor Madison County Bank have objected to the plan.

The Debtor proposes to pay Mrs. Melcher approximately $30,000 a year on a secured claim of $394,481.69. That debt is to be amortized over 30 years at 5.25% with a 10 year balloon. However, the $30,000 amount is conditioned upon there being $30,000 available after payment of all of the farm expenses and payment to Farm Credit Services and Madison County Bank. If the yield is low in one particular year, or prices are low, it is quite possible that she would receive significantly less than the proposed $30,000.

In addition to the above, Mrs. Melcher's law firm has a claim in the amount of $9,000 awarded in the dissolution of marriage decree. Mr. Melcher's plan proposes to pay that over three years.

There are real estate taxes which are delinquent in the amount of $33,076.72. The plan proposes to pay that amount over 10 years at 5.25%. The first payment would not be due until a year after confirmation. The plan proposes to pay trustee fees at no more than $4,000 per year.

Plan payments, including all of the above, amount of $70,979 per year.

Filing #156 is a document entitled "Approximate Melcher Income and Expenses - 2009." It shows total income of $186,650 and expenses of $130,200, leaving a net income of $56,450. That net income would be used to pay the plan payments. Since the plan payments are over $70,000 per year, not including income tax, attorney fees allowed to Mr. Melcher's counsel, and

attorney fees which may be allowed to Mrs. Melcher's counsel for services rendered in the bankruptcy case, recognizing that the law firm has an over secured judicial lien, it is obvious that the plan is not feasible.

Upon questioning, Mr. Melcher eventually asserted that Filing #156 does not accurately reflect his income and expenses for 2009. However, he gave no indication as to what his actual income and expenses were, and as mentioned above, there are no tax forms in evidence which would support his belief that he could make all of the payments.

Prior to the trial, the Debtor entered into stipulations with Farm Credit Services and Madison County Bank whereby he made the 2010 plan payments for those creditors to the trustee. The stipulation authorized the trustee to make the payments to those two creditors. Although he testified he has the $30,000 that the plan provides for Mrs. Melcher in 2010, he did not deliver that to the trustee and it has not been made available to her.

Mr. Melcher was ordered by the state court to pay Mrs. Melcher approximately $400,000 within 45 days of the date of the decree, by borrowing or sale of property. She was ordered to turn over the rents she was receiving from the hog operation. She complied with the decree, thereby giving up over $7,000 per month in income. He did not comply with the decree. He has made no effort to sell any property so that she could be paid. He did attempt to borrow from Farm Credit Services and the Bank of Madison, but they have declined to lend him any more money. The parties agree that the property he received is worth approximately a million dollars subject to secured claims, including Mrs. Melcher's judgment, of less than $800,000. He has no commitment, either oral or in writing, that any lender will, at the end of 10 years loan him sufficient funds to pay the balance owed to Mrs. Melcher.

Because he did not comply with the state court order and regularly refuses to pay child support and alimony, plus failing to provide health insurance, Mrs. Melcher's finances have been ruined. While he has had the farm operation and income from it, she has nothing. This plan does not treat her fairly. An example of the unfairness and the discrimination involved here is the payment of the 2010 amounts to Farm Credit Services and Bank of Madison and the failure to make any arrangements to distribute any funds to Mrs. Melcher.

## CONCLUSIONS OF LAW

The plan is proposed in bad faith and is not feasible. Section 1225 of the Bankruptcy Code directs the court to confirm a plan if, among other things, the plan has been proposed in good faith, the Debtor will be able to make all payments under the plan and to comply with the plan, and the Debtor has paid all amounts that are required to be paid under a domestic support obligation. This plan fails on all three points.

## SUMMARY

This is the second plan this court has found to be unconfirmable. For all of the reasons stated above, the interest of Mrs. Melcher and her law firm are not adequately protected by this plan. Not only is the plan denied confirmation, but relief from the automatic stay is granted for cause.

IT IS ORDERED that the amended plan, Filing #86, is denied confirmation and the Motion

for Relief from the Automatic Stay, Filing #75, is granted.

       DATED:       March 15, 2010

                                        BY THE COURT:

                                      /s/ Timothy J. Mahoney
                                      Bankruptcy Judge

Notice given by the Court to:
      *John Hahn
      *David Copple
      James Overcash
      U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.